UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD D. JOHNSTON, JR.,

    Plaintiff,

v.                                           Case No. 1:10-cv-1071
                                             Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on December 11, 1964 (AR 97).[1] Plaintiff alleged a disability onset date of September 18, 2006 (AR 97). He completed two years of college (AR 200). Plaintiff had previous employment as a molder in a foundry and a plant operator at a chemical plant (AR 195, 202-04). Plaintiff identified his disabling conditions as: problems with his right shoulder and right knee, resulting in extreme limitation of mobility in his right shoulder (restricting work to his left arm); constant moderate or severe pain; the need for a "complete shoulder replacement"; and knee problems requiring five injections in 2006 and 2007 (AR 194). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 1, 2010 (AR 13-20). This

---

[1] Citations to the administrative record will be referenced as (AR "page #").

decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 18, 2006 and met the insured status requirements under the Act through September 20, 2012 (AR 15). Second, the ALJ found that plaintiff had a severe impairment of right shoulder glenohumeral degenerative arthritis (AR 15). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 11). In this regard, the ALJ reviewed Listing1.02B ("Major dysfunction of a joint(s)") (AR 17). The ALJ decided at the fourth step that plaintiff had:

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) involving lifting up to 20 pounds occasionally; lifting or carrying up to 10 pounds frequently; standing or walking about 6 hours of an 8-hour workday and sitting up to 6 hours of [an] 8-hour workday; never reaching more than 18 inches from his body; and never reaching overhead.

(AR 17). The ALJ also found that plaintiff could not perform any of his past relevant work (AR 19).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 19-20). Specifically, plaintiff could perform 49,000 jobs in the regional economy such as security guard (10,000 jobs), guide/greeter (14,000 jobs), and retail salesperson (25,000 jobs) (AR 19-20). Accordingly, the ALJ determined that

plaintiff has not been under a disability, as defined in the Social Security Act, from September 18, 2006 through the date of the decision (February 1, 2010) (AR 20).

### III. ANALYSIS

Plaintiff has raised one issue on appeal:

**The Commissioner erroneously failed to give appropriate weight to the opinions of the treating physician.**

### A.     Dr. Wagner's November 10, 2009 RFC assessment

In evaluating plaintiff's medical condition, the ALJ noted that plaintiff had a history of right shoulder degenerative disease and that on May 7, 2009, his orthopedic surgeon, Jeffrey D. Recknagel, M.D., restricted him to no reaching overhead, no reaching over 18 inches from his body and no lifting of greater than 20 pounds (AR 175-76).[2]

Approximately six months later, on November 10, 2009, plaintiff's long-time family physician, Paul Wagner, D.O., completed a residual functional capacity (RFC) form in which he identified a number of restrictions (AR 1322-26). Plaintiff could sit for 1 to 2 hours at a time; stand for 10 minutes; and walk 5 to 10 minutes (AR 1323). During an 8-hour workday, plaintiff could sit a total of 4 to 5 hours; stand 10 minutes; and walk 5 to 10 minutes (AR 1323). Plaintiff also needed to change position between sitting and standing every 15 minutes (AR 1323). Plaintiff has been limited in these activities since 1997 (AR 1323).[3] The doctor limited plaintiff to lifting and carrying no more than 5 pounds (AR 1323). Plaintiff should never stoop, reach above his left shoulder level, kneel, crouch, or crawl; could occasionally squat and climb (ramps, stairs, ladders, ropes and

---

[2] The ALJ sometimes refers to the orthopedic surgeon as "Dr. Recknagle."

[3] The court notes that the limitations identified by Dr. Wagner as commencing in 1997 predate plaintiff's alleged disability onset date by approximately nine years. During this time (1997 through 2006), plaintiff was employed as molder and plant operator (AR 202).

scaffolds); and could frequently reach above his right shoulder (AR 1324). Plaintiff had limitations to his right hand and could never handle (use the whole hand to seize, hold, grasp or turn), but he could occasionally finger (use fingers to pick and pinch) and feel (use fingertips to feel size, shape, temperature or texture) (AR 1324). Plaintiff could never use his right upper extremity to push, pull or operate hand controls, but could occasionally use his left upper extremity for those purposes (AR 1325). Finally, plaintiff had a number of environmental restrictions: he could never work at unprotected heights or with dangerous moving machinery; he could occasionally work in temperature extremes, humidity or wetness, vibration and with motor vehicles; and he could frequently work with pulmonary irritants and noise (AR 1325). Dr. Wagner stated that plaintiff "will need total knee replacement" (AR 1326).

Plaintiff contends that the restrictions identified by Dr. Wagner were work preclusive, based upon the vocational expert's (VE's) testimony given during step five of the sequential evaluation. Plaintiff's Brief at p. 2. At step five, the ALJ determines whether the claimant possesses the capacity to perform substantial gainful activity that exists in the national economy. This determination must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir.

6

1990).  *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ posed a hypothetical question to the VE which restricted the hypothetical person to activities consistent with plaintiff's RFC (AR 17, 49).  Based on this hypothetical question , the VE identified 49,000 jobs that such a person could perform (AR 49-50).  After the ALJ established this vocational evidence, plaintiff's counsel posed an additional hypothetical question to the VE, which would assumed that the hypothetical person "needed to recline for approximately two out of eight hours" each day (AR 50).  The VE testified that this additional restriction would eliminate the 49,000 jobs identified in the ALJ's hypothetical question (AR 50).

Plaintiff's claim is without merit.  In his brief, plaintiff suggests that Dr. Wagner identified certain work-preclusive limitations (i.e., sitting four to five hours out of an 8-hour workday and standing/walking less than one hour out of an 8-hour workday) and that the VE adopted these limitations.  Plaintiff's Brief at p. 2.  Plaintiff, however, has mis-characterized the VE's testimony.  The VE did not address a hypothetical individual with the restrictions identified by Dr. Wagner.  According to the VE, the work-preclusive limitation would be plaintiff's need to recline for approximately two out of eight hours (AR 50).  Dr. Wagner did not identify a "need to recline."  Rather, it was *plaintiff* who testified that he may sleep in a recliner for two hours during a day (AR 46).  Accordingly, plaintiff's claim of error arising from the VE's testimony will be denied.

### B. Plaintiff's shoulder, knee and wrist (carpal tunnel) problems

Plaintiff also contends that the ALJ failed to adopt Dr. Wagner's RFC assessment as it pertained to his orthopedic conditions. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). But an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (because the opinion of a treating source is entitled to controlling weight under certain circumstances, the ALJ must articulate good reasons for not crediting the opinion of a treating source under 20 C.F.R. § 404.1527(d)(2)).

The ALJ found that plaintiff had a severe impairment of right shoulder glenohumeral degenerative arthritis and adopted the restrictions identified by plaintiff's orthopedic surgeon, Dr. Recknagel, on May 7, 2009 (AR 15-19, 175-76). The ALJ also found, however, that plaintiff's knee problems did not limit his ability to perform basic work activities (AR 16). The ALJ addressed Dr. Wagner's treatment of this condition as follows:

> While Dr. Wagner referred to Dr. Recknagel, an orthopedic surgeon, for shoulder complaints, there is no indication from the deposition taken from Dr. Recknagel that claimant ever discussed any knee problems with him. While Dr. Wagner opines claimant is restricted to never kneeling, crouching or crawling and only occasional squatting, climbing stairs, ladders, ropes or scaffolds (Exhibit 31F), a rehabilitation and physical medicine specialist, Benjamin J. Bruinsma, M.D., performed a consultative evaluation in February 2008 that shows claimant has past history of knee scope times three and Dr. Bruinsma did not indicate any complaints of knee problems in this evaluation. In fact, he notes claimant was independent with sitting to standing (Exhibit 23F, pages 1-4). Moreover, while Dr. Wagner comments on claimant's "painful and slow gait," and "pain" on examination of patella, there is no current record of knee restrictions in any of Dr. Wagner's office notes (Exhibit 6F, 29F). In addition, there are no objective test findings discussing the need for total knee replacement (Exhibit 31F, page 5).

> \*   \*   \*

> On November 10, 2009, claimant's family physician, Paul Wagner, D.O., completed a *Medical Provider's Assessment of Patient's Ability to Do Physical Work-Related Activities*, which essentially finds claimant unable to perform less than sedentary work (Exhibit 31F). However, he referred claimant to Dr. Recknagle, orthopedic surgeon, for orthopedic complaints. A review of Dr. Recknagle's treatment notes dated June 2007 to July 2008 (Exhibit 24F) and his deposition dated May 7, 2009 do not show any treatment or complaint from claimant regarding his knee. In February 2008, Dr. Bruinsma, a consulting rehabilitation and physical medicine specialist, examined claimant and observed claimant ambulating and did not comment regarding a problem. In addition, he notes claimant was independent with sitting to standing. Furthermore, Dr. Wagner does not provide any objective test findings that show claimant's condition to be so severe that it warrants a knee replacement. While Dr. Wagner has a longitudinal history of treating claimant, his conclusions and findings are not supported by objective medical tests or laboratory findings and cannot be given great weight (SSR 96-2p).

(AR 16, 18).

Finally, the ALJ found no objective medical evidence that plaintiff's carpal tunnel syndrome posed more than "minimal limitations" (AR 16). The ALJ addressed this issue in pertinent part as follows:

> Claimant reported having had two left wrist surgeries secondary to a fracture, but there is no evidence in the record to support this history. On July 26, 2007, Dr. Wagner examined claimant's left wrist and described it as swollen with tenderness and reduced wrist extension and flexion. Dr. Wagner offered no diagnosis or restrictions (Exhibit 6F, page 5). There are no objective medical records indicating a diagnosis of carpal tunnel syndrome.

(AR 16).

The ALJ has articulated good reasons for not crediting Dr. Wagner's opinions, particularly regarding the limitations on plaintiff's knees and wrists. The ALJ adopted the restrictions assigned by plaintiff's orthopedic surgeon with respect to the shoulders. "It is within the authority of the ALJ to resolve any conflicts among the opinions of treating and examining physicians." *Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996). The ALJ could properly defer to the opinions of the orthopedic surgeon as a specialist. *See* 20 C.F.R. § 404.1527(d)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). With respect to plaintiff's knee problems, the ALJ noted the lack of records supporting plaintiff's claim for a total knee replacement (AR 16).

With respect to the wrist, the ALJ found no objective medical record indicating a diagnosis of carpal tunnel syndrome (AR 16). Plaintiff has submitted a copy of a letter to the ALJ dated November 12, 2009 (five days before the administrative hearing), which included a nerve conduction study performed on November 30, 2007. *See* NC-stat onCall Report (docket no. 10). The study was included in the administrative record (AR 1295-1299). While the study was "abnormal"

and "consistent with a mild bilateral median neuropathy at the wrist," it did not include a diagnosis of carpal tunnel syndrome (AR 1295-99). In addition, the study included various disclaimers, e.g., the study "does not imply that all listed neuropathies are clinically relevant" and advised that the results "should be clinically correlated" by a doctor (AR 1298). While the ALJ did not specifically address the study in his decision, this does not amount to an error requiring reversal. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). However, it is unnecessary for the ALJ to address every piece of medical evidence. *See Heston*, 245 F.3d at 534-35 (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record). Accordingly, substantial evidence supports the ALJ's decision rejecting plaintiff's claim that he was disabled due to carpal tunnel syndrome.

### IV. CONCLUSION

The ALJ's determination of plaintiff's residual functional capacity, taken together with the testimony of the vocational expert, provides substantial evidence to support the ALJ's finding that there are a significant number of jobs in the relevant economy that plaintiff can perform. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.


Dated: March 16, 2012              /s/ Hugh W. Brenneman, Jr.
                                   HUGH W. BRENNEMAN, JR.
                                   United States Magistrate Judge